UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARIA G. VALDEZ, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-07-CV-0059 OG (NN) |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   Honorable Orlando Garcia
       United States District Judge

**Introduction**

Plaintiff Maria Valdez brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Valdez is not disabled for the purposes of the Social Security Act (the Act) and denying Valdez's applications for Disability Income Benefits (DIB) and Supplemental Social Security Insurance (SSI) benefits. Valdez asks the district court to reverse the Commissioner's decision and to render judgment in her favor. In the alternative, Valdez asks the district court to reverse the decision and remand the case for further proceedings.

After considering Valdez's brief in support of her complaint,[1] the brief in support of the

---

[1]Docket entry # 12.

Commissioner's decision,[2] Valdez's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

This case has an extensive administrative record[5]—over 2,000 pages—indicating that

---

[2]Docket entry # 21.

[3]Docket entry # 19.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]Valdez first filed for DIB and SSI on May 21, 1998. Valdez's first applications were denied and Valdez did not appeal. Valdez applied again on July 6, 2000. An ALJ determined Valdez was not disabled on August 9, 2002. Valdez asked for a review of that decision. Valdez applied for SSI a third time on October 21, 2002—Valdez's insured status for DIB expired on December 31, 2001. On February 12, 2003, the SSA Appeals Council denied review of the August 9, 2002 decision. Valdez then filed a federal lawsuit for review. The district court remanded the case to the SSA on March 29, 2004 for further evaluation. On May 26, 2004, the Appeals Council vacated the August 9, 2002 decision and remanded to the case back to the ALJ. The ALJ held a new hearing and issued a second decision on November 14, 2004. Valdez asked the Appeals Council to review the second decision. The Appeals Council vacated the second decision and remanded the case again, this time with instructions to assign the case to a different ALJ. The second ALJ conducted a hearing on March 9, 2006 and concluded that Valdez is not disabled. That is the decision challenged in this lawsuit.

Valdez exhausted her administrative remedies prior to filing this lawsuit. The case concerns Valdez's applications for DIB benefits filed on August 7, 2000[6] and for SSI benefits filed on August 7, 2000[7] and November 6, 2002.[8] In her applications, Valdez alleged disability beginning May 15, 1996 and September 1, 1999. The decision before the district court is a decision by the ALJ, dated September 22, 2006, concluding that Valdez is not disabled under the Act.[9] Valdez appealed the decision to the SSA Appeals Council on October 18, 2006.[10] The Appeals Council denied the request for review of that decision on November 24, 2006.[11] The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). Valdez filed this action seeking review of the Commissioner's decision on January 18, 2007.[12] Briefing was completed in this case on July 11, 2007.

---

[6]SSA record, p. 128. The ALJ's opinion cites the date of the application as July 6, 2000. I have not determined why the ALJ used this date. Valdez indicated that she signed the application on July 28, 2000; the administrative annotations on the application indicates the application was received on August 7, 2000.

[7]*Id*. at p. 982. The ALJ's opinion cites the date of the application as July 6, 2000. I have not determined why the ALJ used this date. Valdez indicated that she signed the application on July 28, 2000; the administrative annotations on the application indicates the application was received on August 7, 2000.

[8]*Id*. at p. 1047. The ALJ's opinion cites the date of the application as October 21, 2002. I have not determined why the ALJ used this date. Valdez indicated that she signed the application on October 28, 2002; the administrative annotations on the application indicates the application was received on November 6, 2002.

[9]*Id*. at pp. 1013-23.

[10]*Id*. at p. 1007-9.

[11]*Id*. at pp. 1003-6.

[12]Docket entry # 3.

**Issues Presented**

Is the ALJ's decision that Valdez is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

**Analysis**

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[13] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[15]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[16] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its

---

[13] *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[14] *Villa v. Sullivan*, 895 F.2d 1019, 1021-2 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[15] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[16] *Martinez*, 64 F.3d at 173.

judgment for that of the Commissioner.[17]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[18]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[19]

**1. Entitlement to Benefits**

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[20]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21]  A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy,

---

[17]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[18]*Martinez*, 64 F.3d at 174.

[19]*Id*.

[20]42 U.S.C. § 1382(a)(1) & (2).

[21]42 U.S.C. § 1382c(a)(3)(A).

regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[22]

**2. Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[23] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[24]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[25] If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[26] The second step involves determining whether the claimant's impairment is severe.[27] If it is not severe, the claimant is deemed not disabled.[28] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[29] If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[30] If the impairment

---

[22] 42 U.S.C. § 1382c(a)(3)(B).

[23] 20 C.F.R. §§ 404.1520 and 416.920.

[24] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[25] 20 C.F.R. §§ 404.1520 and 416.920.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[31]  If the claimant is still able to do her past work, the claimant is not disabled.[32]  If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[33]  If the claimant cannot do other work, she will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[34]  Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time.[35]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work.[36]

**B. Findings and Conclusions of the ALJ**

In this case, the ALJ reached his decision at step five of the evaluation process.  The ALJ first determined that Valdez met the insured status requirement for eligibility for DIB through

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Leggett*, 67 F.3d at 564.

[35] *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[36] *Anderson v. Sullivan*, 887 F.2d 630, 632-3 (5th Cir. 1989).

December 31, 2001.[37]  This date is important because substantial evidence must show that Valdez was disabled by that date in order to receive DIB.  The date has no bearing on Valdez's eligibility for SSI.

At step one, the ALJ determined that Valdez has not engaged in substantial gainful activity since applying for benefits.[38]  At step two, the ALJ determined that Valdez has the following severe impairments: asthma, back pain, diabetes mellitus, recurrent bladder problems and depression.[39]  At step three, the ALJ determined that Valdez's impairments do not meet or medically equally one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.[40]  At step four, the ALJ determined that Valdez has the following residual functional capacity: Valdez can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; she can walk/stand up to 6 hours and sit up to 6 hours in an 8-hour workday with normal breaks; Valdez needs a work environment reasonably free of noxious fumes, dust, smoke, lint, and other pulmonary irritants; she needs ready access to a lavatory; and she can perform simple, repetitive tasks.  Based on this residual functional capacity, the ALJ determined that Valdez can perform a wide range of light work,[41] but she cannot perform her past relevant work as a nurse's aide because that work requires more lifting capacity than Valdez has.[42]  Because Valdez can no

---

[37]SSA record, p. 1016.  *See* 20 C.F.R. § 404.101.

[38]SSA record, p. 1016.

[39]*Id*.

[40]*Id*. at p. 1018.

[41]*Id*. at p. 1019.

[42]*Id*. at p. 1021.

longer perform her past relevant work, the ALJ continued to step five. At step five, the ALJ consulted a vocational expert and determined that Valdez is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.[43] The ALJ concluded that Valdez is not disabled under the Act.[44]

**C. Valdez's Allegations of Error**

<u>Whether the ALJ failed to properly consider the opinions of Valdez's treating physicians</u>. Valdez maintains that the ALJ failed to consider the opinions of treating physicians Dr. Du, Dr. Blair and Dr. Sarnacki. About Dr. Du, Valdez complains that the ALJ ignored Dr. Du's December 6, 2000 letter to "whom it may concern," stating that Valdez's asthma has given her lots of trouble, requiring several hospital admissions; Valdez's asthma is difficult to manage; and her asthma has been hindering her from performing normal activities, including full time work.[45] Valdez also complains that the ALJ failed to properly consider Dr. Du's November 7, 2002 letter to "whom it may concern," stating that Valdez has asthma, anxiety and diabetes which are difficult to control well; Valdez takes many medications; she makes frequent visits to the emergency room; and she has difficulty driving by herself.[46] Valdez challenges the ALJ's treatment of these opinions, arguing that the ALJ gave no weight to the first opinion and improper weight to the second opinion.

The ALJ must ordinarily give a treating physician's opinion considerable weight in

---

[43] *Id.* at p. 1023.

[44] *Id.*

[45] *See* docket entry # 12, pp. 13-17. *See also* SSA record, p. 260 (Dr. Du's letter).

[46] *See* docket entry # 12, pp. 13-17. *See also* SSA record, p. 1104 (Dr. Du's letter).

determining whether a person is disabled; however, the ALJ may reject the opinion of a physician when the evidence supports a contrary conclusion.[47] The ALJ may assign little or no weight to a treating physician's opinion when the opinion is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.[48]

      Contrary to Valdez's assertion, the ALJ did not ignore Dr. Du's December 2000 letter. The ALJ recognized that Dr. Du had stated in December 2000 that Valdez's asthma was difficult to manage and hindered her from working,[49] but observed that Dr. Du later stated that Valdez's asthma was controlled with medication. The ALJ questioned Dr. Du's ability to know whether Valdez's asthma hindered her ability to work, reasoning that Dr. Du would have to be with Valdez almost constantly to have first-hand knowledge to support that opinion. The ALJ also questioned why Dr. Du did not state in his November 7, 2002 letter when and why Valdez visited the emergency room. In considering Dr. Du's opinions about Valdez's asthma, the ALJ discussed the evidence about the history, treatment and impact of Valdez's asthma.[50] The ALJ specifically compared the asthma listing's requirement for medical intervention at least six times a year with the evidence about the frequency of medical intervention in treating Valdez's asthma

---

[47] *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

[48] *See Newton*, 209 F.3d at 456.

[49] SSA record, p. 1020, lines 7-12.

[50] *Id*. at p. 1017; *id*. at p. 1019.

in explaining why Valdez's asthma did not meet the medical listing for asthma.[51] The ALJ concluded that the medical evidence did not show that Valdez's asthma met or equaled the asthma listing, but the ALJ also recognized that Valdez's asthma hindered her ability to work. Instead of rejecting Dr. Du's opinion, the ALJ included the impact of Valdez's asthma on her ability to work into the ALJ's residual functional capacity assessment and determined that Valdez must work in an environment reasonably free of noxious fumes, dust, smoke, lint, and other pulmonary irritants.[52]

The ALJ also questioned why Dr. Du stated that Valdez's diabetes was difficult to control when Valdez's medical records shows that her diabetes is under control. The ALJ reviewed the medical evidence about diabetes and explained why the evidence shows that Valdez's diabetes is under control. Although Valdez maintains that substantial evidence does not show that her diabetes is under control, substantial evidence does show that Valdez's diabetes is under control.[53] The ALJ did not err by questioning Dr. Du's opinion that Valdez's diabetes was

---

[51]*See id.* at p. 758 (June 12, 1997 visit to emergency room and hospital admission for difficulty with breathing); *id*. at p. 750 (March 3, 1998 hospital admission); *id*. at p. 523 (Feb. 16, 1999 emergency room and hospital admission for acute bronchospasm, acute bronchitis, anxiety, noninsulin dependent diabetes and hypertension); *id.* at p. 241 (Nov. 13, 2000 visit to emergency room complaining about shortness of breath and dyspnea); *id.* at p. 518 (Dec. 25, 2000 visit to emergency room complaining about wheezing); *id.* at p. 1932 (Sept. 12, 2001 visit to emergency room and hospital admission for exacerbation of asthma); *id*. at p. 1267 (Jan. 9, 2003 hospital admission for shortness of breath, cough & congestion); *id*. at p. 1250 (Mar. 10, 2003 visit to emergency room and hospital admission for management of acute bronchospasm, bronchial asthma, diabetes mellitus, pneumonia and generalized anxiety disorder); *id*. at p. 1222 (Mar. 15, 2003 visit to emergency room and hospital admission for shortness of breath, congestion & wheezing).

[52]*Id*. at pp. 1019-20.

[53]*See id*. at p. 637 (doctor wrote on Jan. 21, 1998 that diabetes is controlled); *id*. at p. 732 (doctor wrote on May 11, 1998 that diabetes is stable); *id*. at p. 726 (doctor wrote on Jul. 21, 1998 that diabetes is controlled); *id*. at p. 638 (doctor wrote on Aug. 18, 1998 that diabetes is controlled); *id*.


difficult to control where the medical evidence shows that Valdez's diabetes is under control.[54]

About Dr. Lisa Blair, Valdez complains that the ALJ did not mention the opinion in his opinion. Dr. Blair also wrote a "to whom it may concern" letter. In the letter, Dr. Blair explained that Valdez's most serious medical problems are diabetes, asthma and depression.[55] "Although required to develop the record fully and fairly, an ALJ is not required to discuss *all* the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."[56] In a case with like this one where the record exceeds 2,000 pages, a requirement that the ALJ specifically mention each piece of evidence that the claimant views as significant is unreasonable. Here, the ALJ did not specifically mention Dr. Blair's letter, but the ALJ's opinion clearly reflects the consideration of the medical conditions that Dr. Blair emphasized in her letter. In step two, the ALJ determined that Valdez's diabetes, asthma and depression are severe impairments.[57] In step four, the ALJ included limitations imposed by Valdez's asthma and depression in Valdez's residual functional capacity. Recognizing the

---

at p. 668 (doctor wrote on Sept. 28, 1999 that diabetes is stable); *id*. at p. 317 (about Valdez's diabetes, Dr. Du wrote on Apr. 13, 2000, "doing great"); *id*. at p. 260 (Dr. Du wrote on Dec. 6, 2000 that Valdez's diabetes is manageable); *id*. at p. 1721 (Dr. Du wrote on Sept. 19, 2001 that Valdez's diabetes is adequately managed at this time); *id*. at p. 2021 (medical expert testified on Sept. 3, 2004 that diabetes has not resulted in organ damage); *id*. at p. 1603 (Dr. Blair opined on Aug. 30, 2006 that Valdez's diabetes is stable).

[54]At Valdez's June 13, 2002 hearing, the medical expert opined that Valdez's diabetes is difficult to control because of the high dosage of steroids Valdez takes for asthma. *See* SSA record, p. 73 (explaining that steroids make blood sugar higher than it would be without the medication).

[55]SSA record, p. 1603 (Dr. Blair's letter).

[56]*Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (italics added).

[57]SSA record, p. 1016.

limitations resulting from asthma, the ALJ determined that Valdez must work in an environment reasonably free of noxious fumes, dust, smoke, lint, and other pulmonary irritants. Recognizing the limitations resulting from depression, the ALJ determined that Valdez can perform simple, repetitive tasks. As for Valdez's diabetes, Dr. Blair devoted a paragraph of her letter to explaining the consequences of poorly-controlled diabetes, but she nevertheless stated that Valdez's diabetes was stable as of August 21, 2006. Dr. Blair suggested that Valdez's medical conditions have made it difficult to maintain a steady job, but she did not state that Valdez was unable to work. Likewise, the ALJ's opinion reflects that Valdez is limited in her ability to work, but concludes that Valdez is capable of making a successful transition to work that exists in significant numbers in the national economy. The ALJ's opinion reflects a consideration of Dr. Blair's concerns, even though the ALJ did not specifically mention Dr. Blair's letter.

As for Dr. Sarnacki, Valdez complains that the ALJ failed to address Dr. Sarnacki's treatment notes from January 9, 2003 and March 20, 2003. Although the ALJ did not specifically address these treatment notes, the notes do not differ significantly from the treatment notes that the ALJ specifically addressed. Dr. Sarnacki wrote the notes that the ALJ specifically addressed on August 8, 2002. On that day, Dr. Sarnacki wrote that Valdez had a recurrent bladder infection and blood in her urine. During that visit, Valdez reported that she had diurnal frequency ten times a day and nocturnal frequency ten times a night.[58] Dr. Sarnacki preformed a cystometrogram and bladder dilatation.[59] Dr. Sarnacki determined that Valdez had cystitis (inflammation of the bladder), bladder neck polyps (evidence of long-term inflammation), severe

---

[58] *Id*. at p. 1380.

[59] *Id*. at p. 1382.

urethritis (inflammation of the urethra), urenthral stenosis (narrowing of the urethra), and stress incontinence (the involuntary loss of urine that occurs during physical activity).[60] These findings are essentially the same findings Dr. Sarnacki found when he performed the same procedure on March 20, 2003, with the exception of the additional diagnosis of glomerulation (bladder hemorrhages thought to be associated with some types of interstitial cystitis).[61] Dr. Sarnacki explained that Valdez's symptoms "are more severe than some of the findings. Much of this can be explained by the diabetes and glucosuria [the abnormal presence of glucose in the urine] with urinary tract infection."[62] Although the ALJ did not specifically address the last treatment note, the ALJ's opinion reflects consideration of Valdez's problems with incontinence. The ALJ stated, "[a]lthough the medical evidence does not show claimant has a bladder problem as severe as she alleged, there is evidence of some urinary incontinence in the past. Therefore, the undersigned finds that she needs ready access to a restroom."[63] This determination recognizes that medical test results do not support Valdez's allegations about the severity of her symptoms, but that Valdez has a problem with incontinence because of her other medical problems. The ALJ gave Dr. Sarnacki's opinions appropriate weight.

   Whether the ALJ's hypothetical question was flawed. Valdez contends the ALJ erred in questioning the vocational expert who testified at her hearing because the ALJ did not

---

[60]*Id.* at p. 1382.

[61]*See id.* at p. 1201 (postoperative diagnosis of urenthral stenosis, cystitis, severe urethritis, hematuria, glomerulation and bladder neck polyps).

[62]*Id.* at p. 1201.

[63]*Id.* at p. 1020.

incorporate a number and duration of restroom breaks required because of urinary incontinence in the ALJ's hypothetical question.[64]  Valdez maintains that the record establishes that she needs to use the restroom at least ten times a day and ten times a night, rendering her unable to maintain employment.  A proper hypothetical question posed to a vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ.[65]  "Incontinence may be an impairment for purposes of the . . . Act and must be considered by the Commissioner in determining whether a claimant is disabled."[66]  But I located no authority requiring the ALJ to define the number and duration of restroom breaks required because of urinary incontinence.

Although Valdez now insists that the ALJ failed to properly consider her urinary incontinence, she has never based her disability claim on incontinence.  When questioned at her hearing in September 2004 about why she could not work, Valdez testified that she could not work because of asthma, diabetes, depression and her lower back.[67]  When questioned about why she could not work during her March 2006 hearing, Valdez testified that she could not work because of asthma, diabetes, depression, anxiety, and her lower back.[68]  Considering the basis of

---

[64] Docket entry # 12, pp. 18-20.

[65] *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) ("Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.").

[66] *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999).

[67] *See* SSA record, pp. 1981, 1988, 1989, 1990 & 1994.

[68] *See id.* at pp. 2011-2 & 2015.

15

her disability claim, it is not surprising that the medical evidence about urinary incontinence is sparse. The last record of treatment for urinary incontinence is Dr. Sarnacki's treatment in March 2003. The record includes a referral from Dr. Blair to a urologist on January 4, 2006,[69] but it does not indicate that Valdez saw an urologist before her hearing on March 9, 2006. Nevertheless, the ALJ did not question that Valdez's ability to work is limited by urinary incontinence. Instead, the ALJ incorporated the limitation as established by the medical expert into the ALJ's hypothetical question to the vocational expert. The medical expert testified that Valdez requires close proximity to a restroom,[70] and the ALJ included that limitation in his question to the vocational expert.[71] By doing so, the ALJ's hypothetical question incorporated a limitation resulting from urinary incontinence.

<u>Whether substantial evidence supports the ALJ's determination that Valdez is not disabled</u>. Having addressed Valdez's allegations of error, the central inquiry in this appeal is whether substantial evidence supports the ALJ's conclusion that Valdez is not disabled. No need exists to summarize all of the medical evidence in this case because the ALJ appropriately summarized the medical evidence of Valdez's severe impairments.[72] I have, however, included some of more recent evidence about Valdez's impairments below in order to show that substantial evidence supports the ALJ's determination. Dr. Nasir Syed reported to Dr. Blair on

---

[69]*Id*. at p. 1618.

[70]*Id*. at pp. 2024.

[71]*Id*. at pp. 2037-8.

[72]*Id*. at pp. 1016-21.

April 4, 2006 that Valdez's asthma was stable with treatment following a recent hospitalization.[73] Dr. Blair opined on August 30, 2006 that Valdez's diabetes is stable.[74] Dr. Bradford I. Brunson reported on January 31, 2003 that although Valdez suffers from depression, she has no significant difficulties or problems with activities of daily living.[75] On February 11, 2003, Dr. Farrell Hillman assessed Valdez as: (1) mildly restricted in activities of daily living; (2) mildly limited in maintaining social functioning; and (3) moderately limited in maintaining concentration, persistence or pace.[76] He further assessed Valdez as: (1) moderately limited in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (2) moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors; and (3) moderately limited in the ability to respond appropriately to changes in the work setting.[77] Dr. Hillman assessed all other areas as not significantly limited.[78] Dr. Gerald Phillips examined Valdez on February 7, 2003 and reported that Valdez's tailbone was tender and that Valdez has trouble sitting. An X-ray taken on that day of Valdez's cervical spine showed a normal alignment of the cervical spine; no evidence of

---

[73] *Id.* at p. 1605.

[74] *Id.* at p. 1603.

[75] *Id.* at p. 1151.

[76] *Id.* at p. 1171.

[77] *Id.* at p. 1176.

[78] *Id.* at pp. 1175-8.

fracture or significant soft tissue swelling; and fairly well-maintained disk space heights.[79]  An X-ray of Valdez's sacrum (the large, triangular bone at the base of the spine and at the upper and back part of the pelvic cavity) and coccyx (tailbone) revealed evidence of a subacute chronic fracture with some healing, but no evidence of bony abnormality.[80]  The record doesn't indicate that Valdez has been treated for cystitis or urethritis since March 2003, but no question exists that Valdez has experienced a problem with urinary incontinence.  Substantial evidence supports the ALJ's determination.  The ALJ did not make an error of law.

## Recommendation

Substantial evidence supports the ALJ's decision that Valdez is not disabled and the ALJ did not make an error of law.  I recommend that Valdez's request for relief (docket entry # 3) be DENIED and that the Commissioner's decision denying Valdez DIB and SSI benefits be AFFIRMED.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[81]  **Such party shall file the objections with the**

---

[79] *Id.* at p. 1158.

[80] *Id.* at 1159.

[81] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

**Clerk of the Court, and serve the objections on all other parties and the magistrate judge.**

A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[82]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[83]

    **SIGNED** on February 21, 2008.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[82] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[83] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).